**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAVIER ZAMORA, CDCR #AW-7492, | Case No.: 3:25-cv-2810-WQH-AHG |
| Plaintiff, | **ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2] AND** |
| vs. | |
| JAMES HILL, R. ACEVEDO, JASON SILVA, PEYMAN SHAKIBA, KIRAN TOOR, JAMES MATHER, CHANDER P. MALHORTA, ALAN PAN, | **(2) DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |
| Defendants. | |

HAYES, Judge:

## I.    INTRODUCTION

Javier Zamora ("Plaintiff" or "Zamora"), a state inmate currently incarcerated at R.J. Donovan Correctional Facility ("RJD") and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a Motion to proceed In Forma Pauperis ("IFP"). (ECF Nos. 1, 2.) In his Complaint, Zamora alleges Defendants violated his Eighth Amendment right to adequate medical care when they prescribed him a medication without warning him of its potential side effects and failed to diagnose, and delayed, his treatment for multiple sclerosis and other ailments. (*See* ECF No. 1 ("Compl.").) For the reasons

explained below, the Court grants Plaintiff's IFP Motion and dismisses the Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.   IFP MOTION

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "assess[es] and when funds exist, collect[s], . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). In short, while prisoners may qualify to proceed IFP without having to pay the full statutory filing upfront, they remain obligated to pay the full amount due in monthly payments. *See Bruce v.*

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

*Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Zamora provided a copy of his Prisoner Trust Account Statement and Prison Certificate, dated October 1, 2025,[2] which reflects an average monthly balance of $358.69, average monthly deposits of $399.30, and an available account balance of $261.10. (ECF No. 3 at 4.)

Accordingly, Plaintiff's IFP Motion (ECF No. 2) is granted. The Court assesses an initial partial filing fee of $79.86 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). The facility having custody of Plaintiff must thereafter collect the full balance of the $350 fee owed and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

**III.  SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)**

**A. Standard of Review**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the

---

[2] Prison officials submitted a second Trust Account Statement and Prison Certificate on Plaintiff's behalf on October 21, 2025. *See* ECF No. 4. But because the statement filed by Plaintiff provides an accounting closer to the October 15, 2025 filing date, the Court relies on the October 1, 2025 statement, as opposed to the October 21, 2025 statement. *See* 28 U.S.C. § 1915(a)(2) (requiring financial statement for the 6-month period immediately preceding filing of the complaint).

same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

The Court may consider exhibits attached to the complaint and incorporated by reference, *see Petrie v. Electronic Game Card, Inc*., 761 F.3d 959, 964 n.6 (9th Cir. 2014); Fed. R. Civ. P. 10(c), but is not required to blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences, nor accept as true allegations that are contradicted by the exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Plaintiff's Allegations

Plaintiff's Complaint includes allegations beginning in late 2015 and continuing through 2024. (*See* Compl. at 5.) Plaintiff alleges that he was prescribed the medication, Humira, from January 26, 2015 to June 11, 2015. *Id.*; *see also* ECF No. 1-2 at 14. He then stopped taking the medication for a period of time. On December 8, 2015, an RJD doctor named Silva "issued" Zamora a "second round" of Humira. (Compl. at 4; *see also* ECF No. 1-2 at 12–13.) While it is not clear from the allegations in the Complaint, attached exhibits referenced by Plaintiff indicate the Humira was prescribed to treat Plaintiff's "folliculitis decalvans."[3] (ECF No. 1-2 at 10.)

On May 26, 2016, after Zamora complained of dizziness, Silva ordered an MRI "to

---

[3] Folliculitis decalvans is a rare condition that causes ongoing, chronic inflammation of a patient's hair follicles and scalp. *See* https://my.clevelandclinic.org/health/diseases/22784-folliculitis-decalvans (visited Feb. 23, 2026).

[rule out] demyelinating [central nervous system] disease as possible adverse effect of Humira." *Id.* at 15.

After the MRI was performed, Zamora met with Shakiba, another RJD doctor, to discuss the results on June 2, 2016. (ECF No. 1-3 at 2.) Shakiba noted that the MRI "showed a solitary white matter lesion in the right cerebellar hemisphere [of Zamora's brain], which could be the focus of demyelination in the setting of anti-TNF therapy [such as Humira]." *Id.* Shakiba told Zamora they would discontinue the Humira, referred him for a follow-up appointment with a dermatologist the following week, and for an appointment with his primary care physician early the next month. *Id.*

Zamora met with a dermatologist on June 8, 2016, who agreed with the decision to discontinue the Humira. (ECF No. 1-2 at 10.) On June 22, 2016, Zamora saw Silva again, who noted that Zamora was "off of Humira due to a potential side effect with demyelinating-type condition." *Id.* Silva also ordered a second MRI to check for any changes and referred Zamora to neurology "to ensure that we are not dealing with another condition." *Id.*

The factual allegations in the Complaint then jump to the year 2019. Zamora alleges that he saw Toor, another RJD doctor, on January 24, 2019 and December 3, 2019. (Compl. at 7.) Zamora told Toor he felt his health was getting worse and he was experiencing migraine headaches, visual problems, nausea, vomiting, falls and shortness of breath. *Id.* at 8. Plaintiff asked Toor to order a number of specific tests, including an "MRI test, cerebral fluid test, nerve conduction test, anticardiolipin antiosies test, bowel biopsies [sic] test, parathyroid hormone tests, serum protein immunoelectrophoresis tests, and genetic tests for early detection of cancer and related ailments, i.e., . . . Multiple Sclerosis and Von Hippel-Lindau [D]isease[]." *Id.* Toor told Plaintiff an MRI was not necessary and did not note Plaintiff's request for additional testing in his medical chart. *Id.* During the January exam, Toor noted Zamora's most recent MRI had been "less than six months back." (ECF No. 1-3 at 6.) On December 3, 2019, Toor indicated an MRI was not necessary because Zamora "had 3–4 MRIs in the past few years" which indicated "no new changes." *Id.* at 7.

On February 1, 2021, Zamora was seen by RJD Dr. Mathur. (Compl. at 9.) The report of that visit indicates Mathur conducted a physical exam, noted Zamora had had an MRI on December 30, 2020, and commented that Zamora's chronic dizziness was "possible central-origin vertigo." (ECF No. 1-4 at 3.) Mathur recommended Zamora be evaluated by a neurologist. *Id.* Zamora alleges that this was a "misdiagnosis" and that his symptoms were "clearly connected to Multiple Sclerosis and Von Hippel-Lindau diseases." (Compl. at 9.)

Plaintiff saw Dr. Malhorta, a neurologist, on April 7, 2021. Zamora alleges Malhorta failed to accurately note his symptoms and "omit[ed] his request for the seven aforementioned tests, while blatantly ignoring his symptoms." *Id*. at 10.

Zamora saw Toor again on August 4, 2021 and November 22, 2021. He again requested an MRI and the additional tests noted above. On August 4, 2021, Toor declined to refer Plaintiff for an MRI, stating that "no extra tests will help because it's impossible for your fatigue and respiratory problems to be connected to Multiple Sclerosis or those other diseases." *Id.* at 8. During the November 22, 2021 visit, Toor agreed to refer Plaintiff for another MRI but declined to order any additional tests. *Id.*; *see also* ECF No. 1-3 at 11.

Around this same time, Zamora was also seen by Dr. Pan in the RJD TTA[4] on November 17, 2021 and November 23, 2021. (Compl. at 10.) Plaintiff alleges that Pan improperly noted in his medical chart that Plaintiff had denied "having any headache or dizziness right now . . . denies injury denies fall and/or head trauma" when Plaintiff had told him he was experiencing "all those symptoms and more." *Id.* Zamora also alleges that on November 23, 2021, he told Pan he was suicidal but Pan failed to keep him in the medical facility until he could be evaluated by a mental health professional. *Id.* at 11.

It appears the MRI previously ordered by Toor was conducted on November 30,

---

[4] It appears Zamora was seen by Pan in RJD's "Triage and Treatment Area," which is "similar to an emergency room." *See Poslof v. Martel*, No. 3:18-cv-00761-MMA-AGS, 2018 WL 4489310, at *3 n.4 (S.D. Cal. Sept. 19, 2018).

2021. (ECF No. 1-5 at 6.) A report attached to the Complaint indicates this MRI showed a "new abnormal FLAIR signal in the left cerebellar hemisphere" and a lesion "suspicious for neoplasm such as an intramedullary hemangioblastoma." *Id.*

Plaintiff had a spinal lumbar puncture test on April 14, 2022. (Compl. at 12.) It appears that after this test Zamora was diagnosed with Multiple Sclerosis ("MS"). *Id.*; *see also* ECF No. 1-5 at 4. Zamora states he acquired a "cancerous condition" as a result of the delayed MS diagnosis. (Compl. at 12.) The most recent medical records referenced in the Complaint show he has received testing and treatment for "presumed cerebral and spinal hemangioblastoma, presumed von Hippel Lindau [disease]." ECF No. 1-5 at 10.

### C. Discussion

Zamora seeks relief pursuant to 42 U.S.C. § 1983 and names eight Defendants: Hill, Acevedo, Silva, Shakiba, Toor, Mathur, Malhorta, and Pan. (Compl. at 5–11.) Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to warn him about Humira's side effects, and by failing properly diagnose and treat his medical issues. *Id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by "a person" acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1. Rule 10

As an initial matter, the Court notes that Zamora's Complaint violates Federal Rule of Civil Procedure 10, which governs the form of pleadings. Rule 10(a) states in relevant part that the caption of a complaint "must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." Fed. R. Civ. P. 10(a). Here, in the caption of the Complaint, Zamora names only "James Hill (Warden), et al." as Defendants. (Compl. at 1.) Zamora also fails to list the individual defendants in the portion of the form Complaint that follows. *See id.* at 2. If a plaintiff does not list the names of all the defendants he intends to sue in the proper space in the caption, the complaint could be subject to dismissal on that basis alone. *See Ferdik v. Bonzelet*, 963

F.2d 1258, 1260–61 (9th Cir. 1992) (affirming dismissal of action under Rule 41(b) based on the failure to comply with a court order that the complaint be amended to name all defendants in the caption as required by Rule 10(a)). Here, the Court declines to dismiss the Complaint for failure to comply with Rule 10(a) alone. However, as discussed below, if Plaintiff chooses to amend his complaint, he must name all of the parties in the caption. *See* Fed. R. Civ. Pro. 10(a).

### 2. Eighth Amendment

Zamora claims all Defendants violated his rights under the Eighth Amendment. "Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cleaned up)). A medical need is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted).

A prison official is deliberately indifferent to that need if he "knows of and disregards an excessive risk to inmate health." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotation marks and citation omitted). While deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care," *Jett*, 439 F.3d at 1096, it "is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper are all insufficient to constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v.*

*Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, a plaintiff must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013).

### a.   Hill and Acevedo

First, Zamora fails to state a claim against Hill and Acevedo, both of whom Zamora alleges served as RJD wardens between 2015 and 2024.[5] (Compl. at 5.) Supervisory personnel may not be held liable under § 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire*, 726 F.3d at 1074–75. Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff fails to state a claim against Hill or Acevedo because he alleges no facts suggesting any personal participation on their part. Zamora alleges only that Hill and Acevedo, as RJD wardens, oversaw policies related to providing inmate healthcare at RJD and "permitted medical staff to refuse providing necessary medical care for serious medical needs when possible death was not apparent." (Compl. at 5.) While Zamora references

---

[5] Although Plaintiff does not specify when Hill or Acevedo served as RJD wardens, the Court judicially notices that Hill became RJD's acting warden in 2022 and was officially appointed as RJD warden on December 14, 2023. *See* CDCR Press Release, "Governor Announces Five CDCR Appointments," https://www.cdcr.ca.gov/insidecdcr/2023/12/15/governor-announces-5-cdcr-appointments/ (Dec. 15, 2023) (visited Feb. 23, 2026). Acevedo became RJD's acting warden in 2024 and was officially appointed as warden on January 8, 2026. *See* CDCR Press Release, "Governor Appoints Six to CDCR Leadership Positions," https://www.cdcr.ca.gov/insidecdcr/2026/01/05/governor-appoints-6-to-cdcr-leadership-positions/ (Jan. 5, 2026) (visited Feb. 23, 2026). *See Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999–00 (9th Cir. 2010) (taking judicial notice of records of press releases and material posted on government websites).

several dates spanning from late 2015 to late 2024, *see id.*, upon which Hill and Acevedo purportedly violated his Eighth Amendment rights, he alleges no facts regarding any specific action (or inaction) taken by Hill or Acevedo related to his medical care. In short, Plaintiff's broad and conclusory allegations fail to plausibly show how, or to what extent, Hill and Acevedo may be held individually liable for any constitutional injury suffered by Plaintiff. *See Iqbal*, 556 U.S. at 676–77; *Jones v. Cmty. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (stating that even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" to state a § 1983 claim). Therefore, Plaintiff has failed to state a plausible claim against Defendants Hill and Acevedo. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 676, 678.

### b.    Silva

Next, Zamora alleges that Dr. Silva violated his Eighth Amendment rights when he prescribed him a "second round" of Humira, which was administered from December 8, 2015 through June 8, 2016, without warning him of the medication's potential side effects.[6] (Compl. at 5.) Zamora also alleges that Silva "failed to discontinue" the medication when "each dosage was damaging plaintiff's health and risking his life." *Id*. at 6.

To proceed on a claim that a medical professional violated the Eighth Amendment for having chosen a prescription that caused negative side effects, the plaintiff must plead a "culpable mental state" when prescribing the medication. *See Murillo v. Thornton*, No. 07-CV-0197 W(POR), 2008 WL 110899, at *4 (S.D. Cal. Jan. 9, 2008). In other words, the medical professional must have known that this inmate faced a particularized risk for the resulting side effect. *See Toguchi*, 391 F.3d at 1058; *see also Thomas v. Antipov*, No. 2:11-cv-1138-MCE-EFB P, 2015 WL 641446, at *12 (E.D. Cal. Feb. 12, 2015), *report and*

---

[6] Zamora alleges that Humira's labelled side effects include possible neurological issues, "including development of demyelinating disease, such as multiple sclerosis or vision problems," and that Humira has a "causal association with cancer." (Compl. at 6, ECF No. 1-2 at 6.)

*recommendation adopted*, 2015 WL 1345307 (E.D. Cal. Mar. 20, 2015), *modified on reconsideration*, 2015 WL 1801346 (E.D. Cal. Apr. 16, 2015) ("Under *Toguchi*, Ma's decision to prescribe Tylenol # 3 cannot constitute deliberate indifference if Ma did not believe that the medication presented a serious risk of harm to plaintiff.").

Here, a "medical progress note" signed by Silva states he had prescribed Zamora Humira to treat his "folliculitis decalvans," after Zamora had been prescribed the medication previously. (ECF No 1-2 at 12.) Zamora alleges no facts suggesting Silva was aware of any particularized risk to Zamora when he prescribed the medication. Thus, he has failed to plausibly allege that Silva was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and also failed to allege that Silva subjectively "drew that inference." *See Farmer*, 511 U.S. at 837. Accordingly, Silva's alleged failure to advise Zamora of Humira's potential side effects, at most, amounts to medical malpractice or professional negligence but not deliberate indifference. *See Burgess v. Mar*, 395 F. App'x 368, 368–69 (9th Cir. 2010) (citing *Toguchi*, 391 F.3d at 1060) ("[Doctors'] alleged failure to warn [plaintiff] of the potential side effects of pain medicine constitute[s] negligence at most, and not deliberate indifference."); *Williams v. CDCR*, No. 1:14–cv–01912–JLT (PC), 2015 WL 6669816, at *5 (E.D. Cal. Oct. 29, 2015) ("Failure to advise[] Plaintiff of the negative side-effects of a medication . . . may constitute, at the most medical malpractice—which is a form of professional negligence.").

To the extent Zamora alleges that Silva failed to promptly discontinue the medication after he began experiencing side effects, the facts as currently alleged do not support such a claim. After Zamora complained of dizziness while on Humira, Silva ordered an MRI[7] of his brain on May 26, 2016 to "rule out a demyelinating condition,

---

[7] Although Zamora does not specify when the first MRI was performed, records attached to the Complaint indicate that the first MRI was performed on May 31, 2016, along with a follow-up MRI on June 29, 2016. (ECF No. 1-5 at 6.)

which is considered a potential side effect of Humira."[8] (ECF No. 1-2 at 10, 15.) When the MRI showed possible demyelinating condition, the medication was discontinued by June 8, 2016.[9] *Id.* at 10. Silva then ordered a second MRI, to ensure the condition was not worsening. *Id.* Thus, the facts show that Silva took steps to determine the cause of Zamora's dizziness and when testing showed it could be related to the Humira, the medication was discontinued.

In sum, Plaintiff has not alleged sufficient facts to show Silva acted with deliberate indifference. *See Toguchi*, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard."). Zamora therefore fails to state an Eighth Amendment claim against Silva. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

c.    Shakiba

Zamora alleges that Dr. Shakiba violated his Eighth Amendment rights on June 2, 2016, when he "omitted" Zamora's requests for several specific medical tests, including "cerebral fluid test, anticardiolipin antibodies test, nerve conduction test, bowel biopsies tests, parathyroid hormone tests, serum protein immune-electrophoresis tests and genetic tests for early detection of cancer." (Compl. at 7.) Plaintiff also alleges that Shakiba erroneously noted in Plaintiff's medical chart that he "does not have any acute concerns besides the dizziness" when Zamora had complained of regular migraine headaches, visual problems, nausea and shortness of breath. *Id.*

First, the decision whether to order specific medical tests or use different or preferred therapeutics is a matter of medical judgment that does not, by itself, constitute an Eighth

---

[8] The terms "demyelinization" or "demyelination" are defined as the "loss of myelin with preservation of the axons or fiber tracts. Central demyelination occurs within the central nervous system (e.g., the demyelination seen with multiple sclerosis); peripheral demyelination affects the peripheral nervous system (e.g., the demyelination seen with Guillain–Barre syndrome)." *Torrence v. Hsueh*, No. 2:10-cv-1222 KJM KJN P, 2013 WL 322155, at *7 (E.D. Cal. Jan. 28, 2013) (citing Stedman's Medical Dictionary 509 (28th ed. 2006)).

[9] It appears the Humira was discontinued as early as June 2, 2016, when Zamora saw Shakiba for the results of his May 31, 2016 MRI. *See* ECF No. 1-3 at 2 (noting "we will discontinue Humira").

Amendment violation. *Estelle*, 429 U.S. at 107 ("[T]he question whether . . . diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *see also Toguchi*, 391 F.3d at 1058 ("[A] mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference.") (cleaned up). Moreover, the purpose of Zamora's June 2, 2016 appointment with Shakiba was to discuss the results of Zamora's recent MRI,[10] which was performed after he began experiencing dizziness while on Humira. (ECF No. 1-3 at 2.) Notes from the visit indicate that Shakiba explained the results of the MRI, noting that "demyelination" may have been related to the "anti-TNF therapy" and the Humira prescription was discontinued for this reason. *See id*. Shakiba also referred Zamora for follow-up appointments with dermatology and his primary care physician for ongoing care in the following weeks. *See id.* As discussed above, Zamora saw Dr. Silva shortly thereafter, and Dr. Silva ordered another MRI on June 22, 2016. Plaintiff's allegations are insufficient to plausibly allege that Shakiba acted with deliberate indifference to Zamora's medical needs.

Further, to the extent Zamora alleges that Shakiba failed to include all of his physical complaints and/or his requests for specific diagnostic tests in his medical chart, he does not plausibly allege that Shakiba did so with deliberate indifference. First, Plaintiff does not allege that Shakiba purposefully omitted the information from his chart. *See Crisp v. Wasco State Prison*, No. 1:13-cv-01899-SKO (PC), 2015 WL 3486950, at *5 (E.D. Cal. June 2, 2015) ("Plaintiff has no independent claim for relief under the Eighth Amendment for 'denial of accurate medical records.'"). Additionally, the decision not to order the specific seven tests Zamora requested does not rise to the level of deliberate indifference. *See Toguchi*, 391 F.3d at 1058 (holding that a difference in opinion between a plaintiff and his treating physician over the chosen course of treatment is insufficient to establish deliberate

---

[10] Medical records attached to Plaintiff's Complaint indicate that Zamora received an MRI on May 31, 2016 and another, follow-up MRI on June 29, 2016. (ECF No. 1-5 at 6.)

indifference). Therefore, Zamora fails to state an Eighth Amendment claim against Shakiba. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

          d.     Toor

Next, Zamora alleges that Dr. Toor violated his Eighth Amendment rights on January 24, 2019, December 3, 2019, August 4, 2021 and November 22, 2021, when he disregarded Zamora's complaints that his symptoms were getting worse. (Compl. at 7.) He alleges that Toor denied his requests for an MRI, "cerebral fluid test," "nerve conduction test," "anticardiolipin antibodies test," "bowel biopsies test," "parathyroid hormone tests," "serum protein immune-electrophoresis tests" and "genetic tests for early detection of cancer." *Id.*

As to the first three dates, Plaintiff fails to state a claim. Records referenced by Zamora show that on January 24, 2019, he had an appointment with Toor during which he requested an MRI. (ECF No. 1-3 at 6.) Toor noted that Zamora had "had a few MRIs in the past, the last one being less than 6 months back," and, after conducting a physical assessment, concluded that "in view of the stability of [Zamora's] MRI over the years, there is no indication for a repeat MRI at this time." *Id.* Likewise, during Zamora's December 3, 2019 appointment, Toor noted Zamora's history of "chronic stable white matter demyelination in his cerebellum" and that Zamora had "3–4 MRIs in the past few years which showed white matter change in his cerebellum to be stable, with no new changes." *Id.* Toor conducted a physical exam and noted "no signs of neurological progression." *Id.* He told Zamora that a "repeat MRI" was not necessary at that time but to "look out for signs of incoordination" and "report back" if he noticed any changes. *Id.* And on August 4, 2021, Toor again noted Zamora's previous MRIs[11] and stated that because he saw no "recent interval change" in Zamora's symptoms, he would "defer the MRI for now." *Id.* at 7. Although Zamora certainly disagreed with Toor's opinion that another MRI

---

[11] It appears Zamora had an MRI in the interim, on December 28, 2020, that showed "flair signal abnormality right cerebellar hemisphere, no interval change compared to prior study." ECF No. 1-4 at 2.

was unnecessary on those occasions, he has not alleged sufficient facts to show that Toor's decision not to order an MRI at those times amounted to deliberate indifference. *See Toguchi*, 391 F.3d 1051, 1058 (holding that a difference in opinion between a plaintiff and his treating physician over their chosen course of treatment is insufficient to establish deliberate indifference).

As to November 22, 2021, Zamora fails to state a claim because, after Zamora reported to Toor that his dizziness was "worse than usual," Toor ordered an MRI. (*See* ECF No. 1-3 at 11.) That MRI appears to have been performed on November 30, 2021. (ECF No. 1-5 at 6.) Plaintiff suggests that Toor should have also ordered seven other diagnostic tests. But this amounts to a mere difference of opinion between Plaintiff and Dr. Toor— not deliberate indifference. *See Toguchi*, 391 F.3d at 1058.

Based on the foregoing, the Court finds that Plaintiff fails to state an Eighth Amendment claim against Toor. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

e.    Mathur

Zamora alleges that on February 1, 2021, Dr. Mathur misdiagnosed him with "Central-origin Vertigo," when his symptoms were "clearly connected to Multiple Sclerosis and Von Hippel-Lindau diseases." (Compl. at 9.) Plaintiff also alleges that Mathur failed to include his requests for the specific additional diagnostic tests (discussed above) in his medical chart. *Id.*

To the extent Mathur may have misdiagnosed Zamora, there are no facts alleged in the Complaint suggesting that Mathur did so with deliberate indifference. Records referenced by Plaintiff indicate that Mathur saw him on February 1, 2021 to follow up after his December 28, 2020 MRI. (ECF No. 1-4 at 2.) Mathur noted that the MRI showed a "stable but persisting right cerebellar T2 signal," *id.* at 3, but stated there was "no interval change compared to prior study," *id.* at 2. Although Mathur indicated the cause of Zamora's dizziness was "[p]ossible central-origin vertigo," he also recommended Zamora be evaluated by a neurologist given his symptoms and MRI findings. *Id.* at 3.

15

As discussed above, an Eighth Amendment violation requires deliberate indifference, not mere negligence, including when it comes to medical diagnoses. And here, while it now appears that Mathur's tentative diagnosis of "central-origin vertigo" may have been incomplete or even incorrect, much more is required to rise to the level of deliberate indifference. For example, in *Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012), the Ninth Circuit affirmed the dismissal of deliberate indifference claims against a surgeon for failing to operate on the plaintiff's hernia. *Id.* at 1123. The surgeon examined the plaintiff for "two seconds" and concluded, based on that perfunctory examination, that there was "no definite hernia"—despite two doctors having previously diagnosed the plaintiff with a hernia. *Id*. at 1116–17. The surgeon sent the plaintiff away with no treatment plan. *Id*. at 1117. The court found that the allegations against the surgeon were insufficient to show deliberate indifference because the surgeon "decided not to operate because he thought that Plaintiff was not suffering from a hernia." *Id.* at 1123. And because the allegations amounted to no more than negligent misdiagnosis, the claims were dismissed. *Id*.; *see also Harris v. Jhamou*, No. 1:19-cv-01408-SAB (PC), 2020 WL 2561284, at \*3 (E.D. Cal. Mar. 13, 2020) (finding plaintiff's allegation that defendant misdiagnosed the cause of his weakness, numbness and pain, and failed to accurately diagnose plaintiff with multiple sclerosis was insufficient to state an Eight Amendment claim).

Likewise, here, Mathur examined Plaintiff, reviewed his medical records, and tentatively concluded that he might be suffering from a type of vertigo. Even then, however, he referred Zamora to a specialist to rule out other possible causes. (ECF No. 1-4 at 3.) As discussed below, Zamora was seen by a neurologist two months after Mathur's referral. (*See* Compl. at 10; ECF No. 1-4 at 5–7.) At worst, Zamora alleges negligence or medical malpractice, both of which are insufficient to state an Eighth Amendment claim. *See Wilhelm*, 680 F.3d at 1123; *see also McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds by, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be

16

established.") Therefore, Plaintiff fails to state a claim against Mathur. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

          f.     <u>Malhorta</u>

Zamora alleges that on April 7, 2021, neurologist Malhorta was deliberately indifferent when he failed to order (or note Zamora's request for) seven specific diagnostic tests and "blatantly ignored his symptoms." (Compl. at 10.) As discussed above, failure to include every request Zamora made for particular testing in his chart does not amount to deliberate indifference. *See Crisp*, 2015 WL 3486950, at *5. Additionally, that Malhorta failed to order the tests Zamora sought does not itself amount to deliberate indifference. Malhorta noted that Zamora's previous MRIs from 2018–2020 were "stable." (ECF No. 1-4 at 7.) Malhorta also performed a neurological exam of Zamora, including evaluations of his cranial nerves, reflexes, coordination, sensation and gait, after which he noted that he had "no specific recommendation, [primary care physician] could update ENT opinion, [follow up] with his [primary care physician]." *Id.* Although Zamora was clearly unsatisfied with the care he received from Malhorta, an alleged medical misdiagnosis and/or a failure to recommend further testing—while possibly serious—constitutes negligence or gross negligence, not deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wood*, 900 F.2d at 1334 (stating that even gross negligence is insufficient to establish deliberate indifference).

In sum, Zamora fails to allege sufficient facts to show that Malhorta acted "in conscious disregard of an excessive risk to [his] health." *See Hamby*, 821 F.3d at 1092. Therefore, he fails to state an Eighth Amendment claim against him. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

          g.     <u>Pan</u>

Zamora alleges that Dr. Pan violated his Eighth Amendment rights when he examined him on November 17, 2021 and November 23, 2021. (Compl. at 10–11.) First,

to the extent Zamora alleges that Pan violated his Eighth Amendment rights merely by failing to order the seven specific diagnostic tests discussed above, he fails to state a claim for the same reasons discussed above. *See Toguchi*, 391 F.3d at 1058; *Estelle*, 429 U.S. at 107 (1976) (noting that the question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and does not amount to deliberate indifference).

Further, Plaintiff has not alleged sufficient facts to show that Pan acted with deliberate indifference. On November 17, 2021, Pan saw Zamora in the TTA for emergency care, after Zamora had complained of chest pain. (ECF No. 1-4 at 9.) Zamora alleges that Pan only checked his vital signs and released him without performing additional tests. (Compl. at 11.) But as discussed above, a difference in opinion as to proper treatment and/or testing does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. And here, notes indicate that an EKG was performed, which showed that Zamora had a "normal" rhythm. (ECF No. 1-4 at 9.) Pan also compared the EKG results with some of Zamora's past EKGs and noted that they were "identical showing normal sinus rhythm." *Id.* Therefore, Plaintiff fails to allege that Pan acted with deliberate indifference. *Estelle*, 429 U.S. at 106

As to November 23, 2021, the Court notes that Zamora had just been seen by Dr. Dr. Toor the day before. (*See* Compl. at 7–8.) And Pan noted that orders for an MRI and "Holter monitor test" for Zamora were already pending. (ECF No. 1-4 at 10.) Pan checked Zamora's vital signs, which appeared to be stable, and released him from the TTA. *See id.* Zamora alleges that he told Pan he was suicidal and thus Pan should not have discharged him without making sure he was seen by mental health professionals. (Compl. at 11.) Notes attached to the Complaint, however, demonstrate that Pan referred Zamora to "mental health for further attention." (ECF No. 1-4 at 10.) Thus, Plaintiff fails to allege sufficient facts to indicate that Pan "acted with a culpable state of mind" when releasing Zamora from the TTA. *See Wilson*, 501 U.S. at 302.

Accordingly, the Court finds that Plaintiff fails to state an Eighth Amendment claim

against Pan. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### h. All Defendants

Finally, Zamora alleges that "Defendants one through eight" were deliberately indifferent to his serious medical needs by failing to diagnose him and "substantially delaying medical treatment for his Multiple Sclerosis." (Compl. at 11.) He states that by the time he was diagnosed with MS in 2022 "the disease had ravaged his entire body with cancerous condition." *Id*. at 12. But as explained above, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Santacruz v. Daniels*, No. 2:23-cv-00258-APG-BNW, 2023 WL 9549818, at *2 (D. Nev. Mar. 22, 2023) (concluding that plaintiff's claim that defendants collectively failed to provide him with adequate medical treatment "is not sufficient to state a colorable claim against any defendant"). Further, misdiagnosis alone is not a basis for a deliberate indifference claim. *Wilhelm*, 680 F.3d at 1123. And a delay in treatment, without more, is likewise insufficient to state a claim. *Shapley*, 766 F.2d at 407. It is only when an official both recognizes and disregards a risk of substantial harm that a claim for deliberate indifference exists. *Peralta*, 744 F.3d at 1086.

Here, while the Court is not unsympathetic to Zamora's situation,[12] the Complaint fails to allege sufficient facts to show that Defendants, individually or collectively, acted with the indifference sufficient to rise to a level of "unnecessary and wanton infliction of pain." *See Estelle*, 429 U.S. at 105–06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, Plaintiff has failed to state an Eighth Amendment claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

---

[12] Although Zamora does not provide detailed facts regarding his current health, medical records he references indicate that he saw an MS specialist for a second opinion on January 17, 2023. (ECF No. 1-5 at 8.) And a medical report dated October 22, 2024 suggests that he was then being treated for "presumed cerebellar and spinal hemangioblastoma in the context of von Hippel Lindau [disease]." *Id.* at 11.

**D. Leave to Amend**

Plaintiff is proceeding pro se and "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). As noted above, the Court reminds Plaintiff that any amended pleading must comply with Federal Rule of Civil Procedure 10(a) by including the names of all defendants in the caption. *See* Fed. R. Civ. Pro. 10(a). The Court grants Plaintiff leave to amend to fix the deficiencies of pleading identified in this Order.

IV. **CONCLUSION AND ORDER**

Accordingly, the Court:

1. **GRANTS** Plaintiff's IFP Motion (ECF No. 2) pursuant to 28 U.S.C. § 1915(a).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $79.86 initial filing fee assessed, if those funds are available at the time this Order is executed, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). All payments must be clearly identified by the name and number assigned to this action.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** Plaintiff's Complaint (ECF No. 1) in its entirety without prejudice for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint that cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner*

*& Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

Dated:  March 26, 2026

Hon. William Q. Hayes
United States District Court